**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

SIBEL ANTONSON, an individual,                              CASE NO.:

    Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY,
INC., a Florida not-for-profit corporation,
STEVEN KALTMAN, an individual, HAL
LIPPMAN, an individual, CRISTINA
GARCIA-GODOY, an individual, RICHARD
SINGER, an individual,

    Defendants.

_____/

## COMPLAINT

    Plaintiff, SIBEL ANTONSON ("Dr. Antonson"), sues Defendants, NOVA SOUTHEASTERN UNIVERSITY, INC. ("NSU"), STEVEN KALTMAN ("Dr. Kaltman"), HAL LIPPMAN ("Dr. Lippman"), CRISTINA GARCIA-GODOY ("Dr. Garcia-Godoy"), and RICHARD SINGER ("Dr. Singer"), and alleges the following:

## NATURE OF THE ACTION

    1.    Dr. Antonson is a distinguished doctor of dental surgery, author, and academic with both national and international recognition. She has previously served as the first American female President elected to the International Association of Dental Research Dental Materials Group - the oldest and largest international dental research organization. She is also founder and President of the Minimally Invasive Dentistry Research Network of the International Association of Dental Research, and Recipient of the Peyton/Skinner Award for Innovation for her invention, fabrication and market introduction of the world's first one-step finishing and polishing device, among other

1

accoladed during her successful career. At all times material hereto, Dr. Antonson has been a full professor, having held successful positions with the University of Florida, SUNY at Buffalo and, before being terminated, at NSU.

2. Dr. Antonson also happens to be a 55-year-old Turkish Muslim-American Woman – immutable characteristics that are, unfortunately, incompatible with the prevailing workplace culture of NSU and the College of Dental Medicine ("CDM"), the ranks of which are dominated and controlled by white Jewish men.

3. Dr. Antonson experienced a toxic, hostile, and career-damaging work environment surreptitiously engineered by Defendants to make Dr. Antonson's continued employment untenable through a series of cruel pretextual actions. To this end, Defendants achieved their goal – the removal of an otherwise eminently qualified Assistant Dean because of *how* she presents to the community as a fellow American.

4. Dr. Antonson is suing Defendants under 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§760.01-760.11, *et seq.*, Florida Statutes, for nationality, gender, and religious discrimination, harassment, and retaliation.

## PARTIES, JURISDICTION AND VENUE

5. Dr. Kaltman, Dr. Lippman, Dr. Garica-Godoy, and Dr. Singer shall collectively be referred to as "Individual Defendants."

6. This is a civil action for damages in excess of $75,000, exclusive of interest, attorney's fees and costs.

7.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367.

8.     Pursuant to Rule 4, Fed. R. Civ. P., this Court has personal jurisdiction over Defendant, NSU, because NSU is a Florida not-for-profit University with its principal place of business in Broward County, Florida, such that personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

9.     Pursuant to Rule 4, Fed. R. Civ. P., the Court has personal jurisdiction over Individual Defendants as said Defendants are Florida residents, did work and/or continue to work at NSU at all times relevant hereto, and are otherwise *sui juris*, such that personal jurisdiction over the Individual Defendants does not offend traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because NSU has its principal place of business in Broward County, some or all of the Individual Defendants reside in Broward County, and also because the causes of action accrued in Broward County, Florida.

## FACTS AND PROCEDURAL HISTORY

### Parties to this Action and Conditions Precedent

11.     Dr. Antonson is a 55-year-old Turkish-American Muslim woman who was employed by NSU in its College of Dental Medicine ("CDM") from August 12, 2016 until her termination on August 9, 2024.

12.     Defendant, NSU, at all material times hereto, was a Florida not-for-profit corporation that operated an institution of higher learning with its main campus and CDM located in Davie, Florida.

13.     Dr. Kaltman, who is white and Jewish, at all times material hereto, was Dean of the CDM and Dr. Antonson's direct supervisor.

14.     Dr. Lippman, who is white and Jewish, at all times material hereto, was Executive Associate Dean of Operations at the CDM.

15.     Dr. Garcia-Godoy, who is white, at all times material hereto, was Dr. Antonson's replacement as Interim Assistant Dean of Research at the CDM.

16.     Dr. Singer, who is white and Jewish, at all times material hereto, was the Executive Director of the MSCDM Program at the CDM.

17.     Dr. Antonson filed charges of discrimination with the Equal Employment Opportunity Commissions ("EEOC") and received a Notice of Right to Sue letter from the EEOC on April 9, 2025.

18.     Dr. Antonson also filed charges of discrimination with the Florida Commission of Human Relations and on or about November 8, 2024, Dr. Antonson received a Notice of Determination.

19.     All other conditions precedent to Plaintiff suing herein have occurred, or have been performed, waived or excused.

## Background, Initial Employment, and Promotion

20.     Dr. Antonson was employed by NSU in the CDM beginning on August 12, 2016 until her termination on or about August 9, 2024.

21.     Dr. Antonson's career as a dental professional and academic with national and international recognition spans decades. Dr. Antonson was the first American female elected president of the oldest and largest international dental research organization, the International Association of Dental Research.

22.     From the time that she was hired through her last review in early 2023, Dr. Antonson consistently received outstanding reviews by those who supervised her at NSU.

23.     On July 23, 2019, Dr. Antonson was appointed by NSU as Assistant Dean for Research and Development ("ADR"), a primarily administrative position that is grounded in active research and development. Part of Dr. Antonson's appointment as ADR for the CDM was an increase of $10,000 in her salary as a stipend.

24.     Beginning on or about July-September of 2023, Dr. Antonson began experiencing efforts by NSU, through its employees, and, specifically, Dr. Lippman coordinating with the other Individual Defendants, to take deliberate adverse action against her to force her exit from the CDM.

25.     Dr. Antonson is a 55 year old Turkish-American Muslim woman.

26.     Around the time period in question (July-October of 2023), armed tensions between Israeli and Muslim communities within the Middle East began significant escalation.

27.     These gradual escalations in isolated armed conflicts ultimately culminated in the October 7, 2023 attack and subsequent Gaza war. Said attack has severely damaged personal and professional relationships between Muslim communities and Jewish communities, both internationally and domestically.

28.     Dr. Hal Lippman, Executive Associate Dean and the most powerful individual at the CDM, actively acted against Dr. Antonson based on her gender, nationality, and religion. Dr. Lippman always resented that Dr. Antonson was appointed by NSU at the ADR for the CDM – an appointment that Dr. Lippman was vocally never comfortable with and opposed.

29.     Dr. Lippman deliberately influenced the other Individual Defendants, including Dr. Kaltman, to take adverse measures against Dr. Antonson and empowered support staff to take discriminatory action against Dr. Antonson.

### Kerr Grant Termination

30.     Dr. Antonson was awarded the position of Principal Investigator for the Kerr Corporation clinical trial of dental Optibond Universal used for Indirect Dental Restorations (hereinafter "Kerr Grant").

31.     Attorney Pamela Kane of the Panza Maurer Law Firm, working in concert with NSU and Individual Defendants, took action against Dr. Antonson at the direction of NSU that caused substantial delays in Dr. Antonson's ability to perform her job and research activities and caused strained relationships with research sponsors.

32.     Dr. Antonson was excluded from critical communications, was slandered to NSU officials and sponsors, and was both patronized and bullied by NSU and Individual Defendants.

33.     Dr. Antonson brought her issues with Pamela Kane to Dr. Lippman and Dr. Kaltman, but this turned out to be a setup by both individuals. As soon as Dr. Antonson reported her complaints about Pamela Kane to NSU's executive administration, per Dr. Kaltman's directive, NSU immediately launched a retaliatory audit against Dr. Antonson.

34.     Pamela Kane started an investigation and audit against Dr. Antonson and worked with Dr. Kaltman in order to do so without any participation from Dr. Antonson. The investigation and audit lead to significant delays in research work and low recruitment, including work with respect to the Kerr Grant and other grants.

35.     Dr. Antonson was instructed by NSU to cease research activities until the conclusion of the audit by Ms. Kane, eventually leading to the suspension of Dr. Antonson's

research activities and ultimately leading to a failure of the deliverable research findings for the purpose of fulfilling the requirements of the Kerr Grant. When Dr. Antonson asked Dr. Kaltman why the Kerr study needed to be terminated when the study could still be salvaged, Dr. Kaltman responded "tell them [Dr. Kaltman] doesn't want the study, ha ha ha."

36.     In doing so, NSU admitted that it was not properly auditing or accounting for grant management for several years for grants "between 2018 and 2023" – *before* Dr. Antonson was even employed in a faculty capacity with NSU.

37.     NSU has provided no explanation as to why grant audits were not being done periodically so that faculty like Dr. Antonson were not burdened with responding to stale accounting inquiries.

38.     NSU's failure to properly audit grant management provided the perfect pretextual basis for NSU and the Individual Defendants to launch a bogus "investigation," and blame Dr. Antonson for "grant mismanagement" when, in reality, she has no involvement in same and was simply an otherwise well-qualified individual who happened to be a Turkish-Muslim woman.

**Internal Review Board Investigation**

39.     Dr. Antonson was never provided with the results of Ms. Kane's audit but Dr. Kaltman said that the result of the audit lead to Dr. Antonson's demotion from ADR to faculty member. She was subsequently framed by NSU as a non-compliant and rogue individual when there was no evidence of any misconduct.

40.     The delays by both Pamela Kane and NSU, as well as the audit of Dr. Antonson initiated by Dr. Kaltman, directly lead to alleged Kerr Grant noncompliance. The alleged Kerr Grant noncompliance was entirely caused by NSU efforts to hinder the ability of Dr. Antonson to properly do her job and force a severely compressed timeline for the Kerr Grant study. The alleged

noncompliance with respect to the Kerr Grant triggered an Internal Review Board ("IRB") investigation that lead to the issuance of a Corrective Action Plan ("CAP").

41.     The CAP called for Dr. Antonson's removal as Principal Investigator of *another* study funded by the Florida State Department of Health (the "FDOH Study"). This decision was a drastic remedy that was not supported by precedent and applicable IRB procedures. During the IRB investigation, false and defamatory statements were made regarding Dr. Antonson regarding her competency and she was framed as a non-compliant individual who needed to be monitored for clinical trials. The false allegations served as a basis to remove Dr. Antonson as ADR and appoint Dr. Garcia-Godoy as her replacement.

42.     On January 18, 2024, the IRB made its determination of non-compliance and recommendation of removing Dr. Antonson as Principal Investigator for the FDOH study.

43.     Dr. Antonson immediately filed an appeal, which is her legal right under IRB procedures, on February 14, 2024. Dr. Antonson hired an attorney to assist her with her appeal and her appeal was submitted under firm letterhead.

44.     In short, NSU and Individual Defendants attempted to concoct a pretextual action cloaked as "policy and procedure" for a minor self-reported protocol deviation involving patient paperwork in order to strip Dr. Antonson as Principal Investigator for a prestigious FDOH Study.

45.     The result of Dr. Antonson being removed as Principal Investigator on this prestigious study was supposed to serve as a "basis on paper" to demote and, eventually, terminate Dr. Antonson from employment with NSU.

46.     Following an IRB appeal and hearing, the decision to remove Dr. Antonson as Principal Investigator on the FDOH Study was **reversed** on March 21, 2024. This was because the IRB and NSU understood that it could not legally justify such disproportionate, pretextual actions

against Dr. Antonson without appearing to facially discriminate against Dr. Antonson through a nakedly-partisan IRB board for being the wrong sex, ethnicity, and religion to hold rank within the white, male, Jewish-dominated CDM administration.

47.     NSU would later admit that "The IRB later determined that [Dr. Antonson] did not conduct research activities outside of the IRB's approval." The so-called "protocol deviations" were of no consequence and did not place any participants' health or safety at issue.

48.     The actions taken by NSU and Individual Defendants with respect to both the Kerr Grant delay, the internal audit, and the IRB were all pretextual and were designed to manufacture grounds to demote and ultimately terminate Dr. Antonson and replace her with an ADR (Dr. Garcia-Godoy) who "better fit the mold." – i.e. a non-Turkish-Muslim.

49.     Dr. Antonson was informed that NSU and the Individual Defendants were furious with her for hiring an attorney to represent her at the IRB hearing.

50.     While the IRB reversal should have ended the pattern of pre-textual actions against Dr. Antonson, the IRB reversal only served to intensify the efforts to oust Dr. Antonson from NSU entirely.

**<u>NSU and Individual Defendants' Pressure Campaign</u>**

51.     Following the IRB's hearing and reversal of the decision to remove Dr. Antonson as Principal Investigator on the FDOH Study, NSU and the Individual Defendants stepped up their efforts to remove Dr. Antonson from NSU and the CDM.

52.     Dr. Lippman actively hindered and eventually terminated the OBU and FDOH Studies after deliberately failing to provide Dr. Antonson staff, resources, and grant participants.

53.     Dr. Lippman and Dr. Kaltman enabled Dr. Garica-Godoy to misuse her IRB position to defame Dr. Antonson and undermined Dr. Antonson's work performance.

54.     Dr. Lippman also influenced Dr. Kaltman, her direct supervisor, against her.

55.     Dr. Antonson brought her concerns to Dr. Kaltman and NSU's human resources department that she was being subjected to a hostile work environment based on her gender, age, religion, and national origin as a Turkish Muslim woman.

56.     NSU and the Individual Defendants only intensified their retaliatory actions against her following her sending a letter to Dean Kaltman on February 7, 2024 expressing these concerns.

57.     Dr. Antonson's February 7, 2024 email was her desperate attempt to raise awareness to the unfairness, humiliation, and discrimination she was consistently subjected to and for which she was obviously retaliated against and punished. Dr. Antonson cooperated with every aspect of HR's investigation despite their unwillingness to record any meetings and despite having already been demoted.

58.     NSU began processing Dr. Antonson's discrimination complaints in early 2024. Following the IRB decision, NSU retaliated against Dr. Antonson. This is evidenced by the President of NSU's decision to issue a letter that removed Dr. Antonson of her ADR position and stripped her of her $10,000 stipend for that position.

59.     Dr. Antonson was also demoted, returned to faculty status, moved to another department, and had her research team removed. Dr. Antonson was further stripped of her existing office and instructed to move to another office.

60.     Dr. Antonson was forced to sign her reassignment/demotion letter and was threatened with termination if she failed to sign the letter on the same day. Eventually, Dr. Antonson's research grants dwindled down to a single grant.

61.     NSU further prevented Dr. Antonson from using unobligated grant funds for research. Said grant funds were raised through Dr. Antonson's personal time, cost savings, and

extra work without having support staff. These funds were transferred to Dr. Kaltman's discretionary account so that male researchers could use these funds even though the funds were not raised by them.

62.     Said male researchers used the operational and discretionary funds to pay debts, staff, equipment, travel, lobbying, and grant writing while Dr. Antonson was denied use of her own funds for research projects.

**Disparate Pay and Drs. Singer and Kawai**

63.     The CDM consistently paid Dr. Antonson less than her male counterparts throughout the course of her employment and, specifically, less than members of the CDM research team. This was by the design of Defendants, including Dr. Kaltman and Dr. Lippman.

64.     Dr. Kaltman kept Dr. Antonson at the same salary level of junior-ranked faculty who were not part of Dr. Kaltman and Dr. Lippman's "inner circle" of white Jewish men.

65.     Dr. Lippman went so far as to designate Dr. Antonson's office away from the executive area of office suites despite her rank as Assistant Dean of Research until Dr. Antonson insisted on having her office moved to the executive area, which took an additional year to move into.

66.     This was despite the fact that male members of the CDM research team had less responsibility and lower rank than Dr. Antonson.

67.     Two such individuals are Dr. Toshihisa Kawai and Dr. Richard Singer.

68.     Dr. Kawai initially reported to Dr. Antonson.  However, Dr. Kawai had frequent issues of incompetence, mismanagement of students and grant funds, and was aggressive, insubordinate, and accusatory towards Dr. Antonson. Dr. Kawai made clear to Dr. Kaltman that he did not want to report to Dr. Antonson as a Japanese male.

69.     Dr. Richard Singer had previous administrative and discrimination issues at his previous department prior to being put under the supervision of Dr. Antonson.

70.     Dr. Kaltman requested that Dr. Antonson place Dr. Singer in the CDM research department, write him a job description, and "find him something to do."

71.     Dr. Antonson expressed concern to Dr. Kaltman about Dr. Singer's prior behavioral and administrative issues at the time but was assured by Dr. Kaltman, in front of Dr. Lippman, that while he agreed that Dr. Singer was "arrogant," that Dr. Kaltman would "protect [Dr. Antonson] from any of [Dr. Singer's] aggressions.

72.     Dr. Antonson arranged for Dr. Singer to take over three existing CDM grants with dedicated staff. Shortly after Dr. Singer assumed the grants, Dr. Singer asked Dr. Kaltman to eliminate Dr. Antonson's involvement. Dr. Singer told Dr. Kaltman that he did not want to report to Dr. Antonson, a Turkish-Muslim woman, as an Orthodox Jewish man.

73.     Dr. Kaltman continued to provide significant financial support to Dr. Singer even after he lost all of his grant funding due to inexperience, including financial support that lead to the draining of the Research Discretionary Account.

74.     Dr. Kaltman made clear that he would actually protect Dr. Singer despite his mismanagement and incompetence (who remained employed by the CDM through December 31, 2025 and retired thereafter) over Dr. Antonson.

75.     Dr. Kaltman did so because Dr. Singer, like Dr. Lippman, are Jewish males.

76.     All of Defendants' actions and/or inaction alleged herein were accomplished by Defendants acting in concert with one another such that their separate acts and inaction combined to cause the injuries sustained by Dr. Antonson, such that joint and several liability is warranted against Defendants.

## **Summation**

77.     All of the aforementioned actions were taken against Dr. Antonson based on her gender, nationality, and religious beliefs, and were in retaliation for exercising her legal rights to hire a lawyer and oppose the IRB proceedings against her.

78.     Dr. Antonson was subject to retaliation, including demotion of her position at NSU, stripping of her distinguished research positions, humiliation in front of her staff and colleagues, and eventual termination on August 9, 2024. Said outcome is the direct result of Defendants.

## **COUNT I:  VIOLATION OF 42 U.S.C. § 1981 – DISPARATE TREATMENT BASED ON RACE/ETHNICITY**
### **(Against All Defendants)**

79.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80.     This is an action for violation of 42 U.S.C. §1981 – Disparate Treatment.

81.     Plaintiff was an employee of NSU, under an employment contract, and was employed with NSU since August 1, 2016 until her termination on August 9, 2024.

82.     Plaintiff is a racially and ethnically Turkish Muslim, a characteristic protected under 42 U.S.C. §1981.

83.     Plaintiff has been subjected to disparate treatment compared to similarly situated Jewish men who are not Turkish Muslim.

84.     On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped of her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

85.     In addition, Plaintiff was consistently paid less than her male, white counterparts, including Dr. Singer (who is also Jewish) and Dr. Kawai.

86.     Plaintiff was subjected to different disciplinary standards and received harsher penalties, as evidenced by the audit and IRB inquiry, compared to her white, male counterparts.

87.     As a result of the disparate treatment, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

88.     Plaintiff has also experienced emotional and physicial distress, humiliation, and damage to her professional reputation.

89.     But for Plaintiff's race and/or ethnicity, Plaintiff would not have suffered the loss of her legally protected rights.

90.     Defendants' actions constitute unlawful discrimination based on race and/or ethnicity in violation of 42 U.S.C. § 1981, which guarantees all persons the same right to make and enforce contracts as enjoyed by white citizens.

**WHEREFORE**, Plaintiff seeks entry of judgment against Defendants, jointly and severally, awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

## COUNT II:  VIOLATION OF 42 U.S.C. § 1981 – HOSTILE WORK ENVIRONMENT
### (Against All Defendants)

91.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

92.     This is an action for violation of 42 U.S.C. §1981 – Hostile Work Environment.

93.     Plaintiff was an employee of NSU, under an employment contract, and was employed with NSU since August 1, 2016 until her termination on August 9, 2024.

94.     Plaintiff is a racially and ethnically Turkish Muslim, a characteristic protected under 42 U.S.C. §1981.

95.     Plaintiff had consistently performed her job duties satisfactorily and has met or exceeded the expectations of her position and employment.

96.     On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped of her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

97.     Plaintiff was also the subject of bogus: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; 4.) demotion; and 5.) termination.

98.     Despite Plaintiff's plea to HR on February 7, 2024, Defendants failed to take appropriate corrective action to address the hostile work environment they created.

99.     The hostile work environment created by Defendants was severe and pervasive and affected Plaintiff's ability to perform her job duties.

100.    As a result of the hostile work environment, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

101.    Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

102.    But for Plaintiff's race and/or ethnicity, Plaintiff would not have suffered the loss of her legally protected rights.

103.    Defendants' actions constitute unlawful discrimination based on race and/or ethnicity in violation of 42 U.S.C. § 1981, which guarantees all persons the same right to make and enforce contracts as enjoyed by white citizens.

104.     Defendants' actions were intentional, willful, and/or in reckless disregard of Plaintiff's rights under 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff seeks entry of judgment against Defendants, jointly and severally, awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

### COUNT III:  VIOLATION OF 42 U.S.C. § 1981 – RETALIATION
**(Against All Defendants)**

105.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

106.     This is an action for violation of 42 U.S.C. §1981 – Retaliation.

107.     Plaintiff was an employee of NSU, under an employment contract, and was employed with NSU since August 12, 2016 until her termination on August 9, 2024.

108.     Plaintiff is a racially and ethnically Turkish Muslim, a characteristic protected under 42 U.S.C. §1981.

109.     Plaintiff had consistently performed her job duties satisfactorily and has met or exceeded the expectations of her position and employment.

110.     During the course of employment, Plaintiff engaged in protected activities, including, but not limited to, successfully appealing a bogus Institutional Review Board decision on March 21, 2024 and communicating with HR on February 7, 2024 to address the hostile work environment Defendants created.

111.     On April 22, 2024, following Plaintiff's engagement in the aforementioned protected activities, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped of her $10,000 stipend associated with her role as Assistant Dean. This was despite

Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

112.     Plaintiff was also the subject of bogus: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; 4.) demotion; and 5.) termination.

113.     Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

114.     But for Plaintiff's race and/or ethnicity, Plaintiff would not have suffered the loss of her legally protected rights.

115.     Defendants' actions constitute unlawful discrimination based on race and/or ethnicity in violation of 42 U.S.C. § 1981, which prohibits retaliation against individuals like Plaintiff who oppose discriminatory practices or participate in activities to enforce protected rights under statute.

**WHEREFORE**, Plaintiff seeks entry of judgment against Defendants, jointly and severally, awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

### COUNT IV:  VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – MIXED MOTIVE DISCRIMINATION
(Against NSU)

116.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

117.     This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

118.     Plaintiff was an employee of NSU, having been employed with NSU since August 1, 2016.

119.    Plaintiff is a Turkish Muslim woman and, therefore, is a member of protected class(es) under Title VII of the Civil Rights Act of 1964.

120.    On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

121.    Additionally, Plaintiff was consistently paid less than her male, white counterparts, including Dr. Singer (who is also Jewish) and Dr. Kawai.

122.    Plaintiff was subjected to different disciplinary standards and received harsher penalties, as evidenced by the audit and IRB inquiry, compared to her white, male counterparts.

123.    Plaintiff alleges that being a member of multiple protected classes were motivating factors in NSU's decisions to engage in: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; 4.) demotion; and 5.) termination. Plaintiff asserts that, although other factors may have contributed to the decision, her protected characteristic(s) was/were significant and motivating factor(s).

124.    As a result of the treatment exhibited by NSU, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

125.    Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

126.    NSU's actions constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

**WHEREFORE**, Plaintiff seeks entry of judgment against NSU awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and

physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

### COUNT V: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – UNLAWFUL DISCRIMINATION
### (Against NSU)

127.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

128.    This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

129.    Plaintiff was an employee of NSU, having been employed with NSU since August 1, 2016.

130.    Plaintiff is a Turkish Muslim woman and, therefore, is a member of protected class(es) under Title VII of the Civil Rights Act of 1964.

131.    On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped of her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

132.    Additionally, Plaintiff was consistently paid less than her male, white counterparts, including Dr. Singer (who is also Jewish) and Dr. Kawai.

133.    Plaintiff was subjected to different disciplinary standards and received harsher penalties, as evidenced by the audit and IRB inquiry, compared to her white, male counterparts.

134.    Plaintiff alleges that NSU's decisions to engage in: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; and 4.) demotion, were all a pretext for unlawful discrimination. Plaintiff asserts that the true reason for the adverse action was Plaintiff's membership in protected class(es).

135.     Plaintiff will demonstrate pretext by showing that similar situated employees outside of Plaintiff's protected class(es) (i.e. white Jewish males) were treated more favorably under similar circumstances and that NSU's stated reasons for adverse actions against Plaintiff are inconsistent with evidence.

136.     Additionally, NSU has a documented history of discriminatory practices against Turkish Muslims (such as Dr. Basak Dogan and Dr. Cem Sayin) and non-Jewish women (such as Dr. Ana Karina Mascarenhas, who is actively suing Dr. Kaltman and Dr. Lippman in Broward County, Florida, Case No.: CACE23-016158).

137.     As a result of the treatment exhibited by NSU, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

138.     Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

139.     NSU's actions constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

**WHEREFORE**, Plaintiff seeks entry of judgment against NSU awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

## COUNT VI:  VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – HOSTILE WORK ENVIRONMENT
### (Against NSU)

140.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

141.     This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

142.    Plaintiff was an employee of NSU, having been employed with NSU since August 1, 2016.

143.    Plaintiff is a Turkish Muslim woman and, therefore, is a member of protected class(es) under Title VII of the Civil Rights Act of 1964.

144.    Plaintiff had consistently performed her job duties satisfactorily and has met or exceeded the expectations of her position and employment.

145.    On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped of her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position.  Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualification.

146.    Plaintiff was also the subject of bogus: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; 4.) demotion; and 5.) termination.

147.    Despite Plaintiff's plea to HR on February 7, 2024, NSU failed to take appropriate corrective action to address the hostile work environment they created.

148.    The hostile work environment created by NSU was severe and pervasive and affected Plaintiff's ability to perform her job duties.

149.    NSU knew or should have known about the harassment and failed to take prompt and appropriate corrective action.

150.    As a result of the hostile work environment, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

151.    Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

152.    NSU's actions constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

**WHEREFORE**, Plaintiff seeks entry of judgment against NSU awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

### COUNT VII:  VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – RETALIATION
### (Against NSU)

153.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

154.    This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

155.    Plaintiff was an employee of NSU, having been employed with NSU since August 12, 2016.

156.    Plaintiff is a Turkish Muslim woman and, therefore, is a member of protected class(es) under Title VII of the Civil Rights Act of 1964.

157.    Plaintiff had consistently performed her job duties satisfactorily and has met or exceeded the expectations of her position and employment.

158.    On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and striped of her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

159.    Plaintiff was also the subject of bogus: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; 4.) demotion; and 5.) termination.

160.    Despite Plaintiff's plea to HR on February 7, 2024, NSU failed to take appropriate corrective action to address the hostile work environment they created.

161.    Plaintiff's pleas to HR and her Appeal of the IRB decision were protected activities under Title VII of the Civil Rights Act of 1964.

162.    Following Plaintiff's protected activities, NSU still demoted Plaintiff and eventually terminated her employment. NSU's adverse actions would not have occurred but for Plaintiff's protected activities.

163.    There is a causal connection between Plaintiff's protected activities and the adverse employment actions taken by NSU.

164.    NSU was aware of Plaintiff's protected activities at the time the adverse employment actions were taken.

165.    As a direct and proximate result of NSU's retaliatory conduct, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

166.    Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

167.    NSU's actions constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

**WHEREFORE**, Plaintiff seeks entry of judgment against NSU awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

## COUNT VIII:  VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT-
## UNLAWFUL DISCRIMINATION
### (Against NSU)

168.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

169.     This is an action for violation of the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

170.     Plaintiff was an employee of NSU, having been employed with NSU since August 12, 2016.

171.     Plaintiff is a Turkish Muslim woman and, therefore, is a member of protected class(es) under the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

172.     On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped of her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

173.     In addition, Plaintiff was consistently paid less than her male, white counterparts, including Dr. Singer (who is also Jewish) and Dr. Kawai.

174.     Plaintiff was subjected to different disciplinary standards and received harsher penalties, as evidenced by the audit and IRB inquiry, compared to her white, male counterparts.

175.     Plaintiff alleges that NSU's decisions to engage in: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; and 4.) demotion, were all a pretext for unlawful discrimination. Plaintiff asserts that the true reason for the adverse action was Plaintiff's membership in protected class(es).

176.     Plaintiff will demonstrate pretext by showing that similar situated employees outside of Plaintiff's protected class(es) (i.e. white Jewish males) were treated more favorably

under similar circumstances and that NSU's stated reasons for adverse actions against Plaintiff are inconsistent with evidence.

177.   Additionally, NSU has a documented history of discriminatory practices against Turkish Muslims (such as Dr. Basak Dogan and Dr. Cem Sayin) and non-Jewish women (such as Dr. Ana Karina Mascarenhas, who is actively suing NSU, Dr. Kaltman, and Dr. Lippman in Broward County, Florida, Case No.: CACE23-016158).

178.   As a result of the treatment exhibited by NSU, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

179.   Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

180.   NSU's actions constitute unlawful discrimination in violation of the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

**WHEREFORE**, Plaintiff seeks entry of judgment against NSU awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

### COUNT IX:  VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – HOSTILE WORK ENVIRONMENT
**(Against NSU)**

181.   Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint.

182.   This is an action for violation of the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

183.   Plaintiff was an employee of NSU, having been employed with NSU since August 12, 2016.

184.     Plaintiff is a Turkish Muslim woman and, therefore, is a member of protected class(es) under the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

185.     Plaintiff had consistently performed her job duties satisfactorily and has met or exceeded the expectations of her position and employment.

186.     On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and removed her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

187.     Plaintiff was also the subject of bogus: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; 4.) demotion; and 5.) termination.

188.     Despite Plaintiff's plea to HR on February 7, 2024, NSU failed to take appropriate corrective action to address the hostile work environment they created.

189.     The hostile work environment created by NSU was severe and pervasive and affected Plaintiff's ability to perform her job duties.

190.     NSU knew or should have known about the harassment and failed to take prompt and appropriate corrective action.

191.     As a result of the hostile work environment, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

192.     Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

193.     NSU's actions constitute unlawful discrimination in violation of the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

**WHEREFORE**, Plaintiff seeks entry of judgment against NSU awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

## COUNT X:  VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – RETALIATION
### (Against NSU)

194.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 78 of the Complaint as if fully alleged herein.

195.    This is an action for violation of the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

196.    Plaintiff was an employee of NSU, having been employed with NSU since August 12, 2016.

197.    Plaintiff is a Turkish Muslim woman and, therefore, is a member of protected class(es) under the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

198.    Plaintiff had consistently performed her job duties satisfactorily and has met or exceeded the expectations of her position and employment.

199.    On April 22, 2024, Plaintiff was demoted from Assistant Dean to full-time faculty status and stripped of her $10,000 stipend associated with her role as Assistant Dean. This was despite Plaintiff being qualified for the Assistant Dean position. Dr. Garcia-Godoy, who is white, was promoted to the role of Assistant Dean without commensurate qualifications.

200.    Plaintiff was also the subject of bogus: 1.) grant audit; 2.) IRB inquiry; 3.) stripping of her role as Principal Investigator; 4.) demotion; and 5.) termination.

201.    Despite Plaintiff's plea to HR on February 7, 2024, NSU failed to take appropriate corrective action to address the hostile work environment it created.

202.    Plaintiff's pleas to HR and her Appeal of the IRB decision were protected activities under the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

203.    Following Plaintiff's protected activities, NSU still demoted Plaintiff and eventually terminated her employment.  NSU's adverse actions would not have occurred but for Plaintiff's protected activities.

204.    There is a causal connection between Plaintiff's protected activities and the adverse employment actions taken by NSU.

205.    NSU was aware of Plaintiff's protected activities at the time the adverse employment actions were taken.

206.    As a direct and proximate result of NSU's retaliatory conduct, Plaintiff has suffered economic harm, including loss of income, position, status, and benefits.

207.    Plaintiff has also experienced emotional and physical distress, humiliation, and damage to professional reputation.

208.    NSU's actions constitute unlawful discrimination in violation of the Florida Civil Rights Act, Fla. Stat. §§760.01-760.11.

**WHEREFORE**, Plaintiff seeks entry of judgment against NSU awarding her compensatory damages for lost wages, income, benefits, reputational injury, and emotional and physical distress, punitive damages, attorney's fees, and for any further relief this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury on any and all issues so triable.

DATED June 13, 2025.

                                     Respectfully submitted,

HOLIDAY HUNT RUSSELL PLLC
Attorneys for Plaintiff
2699 Stirling Road, Suite A-105
Fort Lauderdale, FL 33312
Telephone: 954.920.5153
Primary email: pleadingshhr@gmail.com
Secondary email: servicesecondary@gmail.com

By:     s/Holiday Hunt Russell
        HOLIDAY HUNT RUSSELL
        FL BAR NO. 955915